ACCEPTED
13-15-00313-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
10/27/2015 7:03:27 AM
Dorian E. Ramirez
CLERK

NO. 13-15-00313-CV

IN THE COURT OF APPEALS
THIRTEENTH JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
10/27/2015 7:03:27 AM
DORIAN E. RAMIREZ
Clerk

NEAL VANZANTE

Appellant-Appellant

V.

TEXAS A & M UNIVERSITY--KINGSVILLE

Defendant-Appellee

On Appeal From the 105th District Court
Kleberg County
Trial Court Cause No. 12-238-D

AMENDED BRIEF OF APPELLANT NEAL VANZANTE

REQUEST FOR ORAL ARGUMENT

Respectfully submitted,

_/s/ Chris McJunkin_____
Chris McJunkin
State Bar No. 13686525
2842 Lawnview
Corpus Christi, Tx. 78404
Tel: (361) 882-5747
Fax: (361) 882-8926
cmcjunkin@stx.rr.com

1

# IDENTITIES OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), Appellant submits the following list of names and last known addresses of all parties and their counsel at trial and on appeal:

Parties to the Trial Court Judgment:

| | |
|---|---|
| Appellant/Plaintiff: | Neal Vanzante |
| Appellee/Defendant | Texas A&M University- Kingsville |

Counsel:

For Appellant:
Chris McJunkin, Appellate Counsel
2842 Lawnview
Corpus Christi, Tx. 78404
Fax: 361-882-8926
cmcjunkin@stx.rr.com

For Appellee:
Mariel Puryear, Assistant Attorney General
Office of Attorney General - Litigation
P.O.Box 12548, Capitol Station
Austin, Tx. 78711-2548
Fax: (512) 320-0667
Mariel.puryear@texasattoneygeneral.gov

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ............................ 2

TABLE OF CONTENTS ........................................ 3

INDEX OF AUTHORITIES ..................................... 6

STATEMENT OF JURISDICTION ............................... 8

STATEMENT OF THE CASE ................................... 8

STATEMENT REGARDING ORAL ARGUMENT ................... 10

ISSUES PRESENTED ........................................ 11

Trial Court Erred in Granting Defendant's Motion for Summary Judgment Dismissing the Appellant's Lawsuit

A. Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi Was Not a Basis Used by Defendant in Not Hiring Appellant:

B. Appellant was not prohibited from applying for the Chair opening by the 2006 Release and Settlement Agreement with TAMU Corpus Christi

The Trial Court Erred in Dismissing Appellant's Lawsuit

A. Appellant Establishes Direct Evidence of Age Discrimination

B. Appellant Establishes Circumstantial Evidence of Age Discrimination

Step One: Appellant's Prima Facie Case
Element No. 1: Appellant is a member of a protected class
Element No. 2: Appellant was Qualified for the Chair Position
Element No. 3: Adverse employment action
Element No. 4: defendant hired someone substantially younger than
Appellant / treated Appellant differently than someone younger

3

. Step Three:  Appellant establishes Pretext:

TATEMENT OF FACTS  ............................................................ 11

SUMMARY OF THE ARGUMENT ................................................ 18

ARGUMENT ............................................................................ 19

Summary Judgment Standard ...................................................... 19

Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi
Was Not a Basis Used by Defendant in Not Hiring Appellant:  .................... 20

Appellant was not prohibited  from applying for the Chair opening by the
2006 Release and Settlement Agreement with TAMU Corpus Christi .......... 23

The Trial Court Erred in Dismissing Appellant's Age Claim: .................... 32

Appellant Establishes Direct Evidence of Age Discrimination .......... 32

Appellant Establishes Circumstantial Evidence of Age Discrimination  .....33

Step One:  Appellant's Prima Facie Case

(a)  Element No. 1:  Appellant is a member of a protected class ..... 35

(b) Element No. 2: Appellant was Qualified for the Chair Position .. 35

Appellant Met Actual Required Qualifications No. 1...       38

Appellant Met  Actual Preferred Qualification ...............       41

Appellant Met Defendant's Alleged Required Qualifications ...42

Appellant Met Def General Qualification: leadership, etc.  ..... 48

Disparate Treatment.......................................................... 53

Plaintiff Met Def  Alleged Qualification: professional, etc...... 56

Disparate Treatment.......................................................... 59

Appellant Met Def AACSB requirement .......18 month........... 60

Appellant Met Def AACSB currency requirement................... 65

(c) Element No. 3: adverse employment action.............................. 69

4

(d) Element No. 4: defendant hired  someone substantially younger than Appellant / treated younger person differently ......................... 69

Step Three:  Appellant establishes Pretext:
  Appellant presents sufficient evidence to create a  genuine issue of material fact that Defendant's Legitimate Nondiscriminatory reasons are false... .............................................................. 71:

CONCLUSION .................................................................................84

PRAYER ...................................................................................... 84

CERTIFICATE OF COMPLIANCE ................................................. 85

CERTIFICATE OF SERVICE ....................................................... 85

APPENDIX ..............................................................................

Appendix1:  June 10, 2015: Order Granting Defendant Texas A&M
        University-Kingsville's Motion for Summary Judgment (CR 1: 1006)

Appendix 2: March 18, 2015: Order Denying Defendant's No-Evidence Motion
        for Summary Judgment  (CR 1: 291).

Appendix 3:  March 25, 2015: Order Denying Defendant's Plea to Jurisdiction
        (CR 1: 292).

Appendix 4:  October 9, 2015: Appellant's Motion for Extension of Time
        to File Brief to October 23, 2015, was granted.

## INDEX OF AUTHORITIES

*Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997).............. 19

*Farley v. M M Cattle Co.,* 529 S.W.2d 751, 753-54 (Tex 1975) .................. 32

*Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (Tex. 1962). ...... 19

*Michael v. City of Dallas,* 314 S.W.3d 687, 690-91
(Tex. App.—Dallas 2010, no pet.) .............................................. 34

*O'connor v Consolidated Coin Caterers Corp,* 517 US 308, 312, (1996)... 69

*Rachid v Jack in the Box, Inc.,* 376 F.3d 305 (5th Cir. 2004)...................... 69

*Rincones v. WHM Custom Serv,* 457 F.3d, 221, 236
(13th Corpus Christi 2015) .............................................. 19, 34

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, (1981)....... 34

Pattern Jury Charge 100 .............................................. 32

## STATUTES:

Texas Rules of Appellate Procedure 38.1 .............................................. 8

Texas Rules of Appellate Procedure 26.1.............................................. 9

Texas Rules of Appellate Procedure 9.4(i)(2)(B) .................................85

Tex.Labor Code Ann. Sec.21.001 .............................................. 21

Tex. Labor Code Sec. 21.051.............................................. 14

NO. 13-15-00313-CV

IN THE COURT OF APPEALS
THIRTEENTH JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

NEAL VANZANTE
Appellant-Appellant

V.

TEXAS A & M UNIVERSITY--KINGSVILLE

Defendant-Appellee

On Appeal From the 105th District Court
Kleberg County
Trial Court Cause No. 12-238-D

AMENDED BRIEF OF APPELLANT NEAL VANZANTE

**TO THE HONORABLE THIRTEENTH COURT OF APPEALS:**

COMES NOW, Appellant, Neal Vanzante, and respectfully submits this, Appellant's

Amended Brief, pursuant to Rule 38.1 of the Texas Rules of Appellate Procedure, and

would show the Court the following:

8

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to TRAP 26.1: Appellant filed his Notice of Appeal within 30 days after order / judgment was signed and within the time allowed by TRAP 26.1; and within 30 days of receiving notice of order / judgment. (CR 1: 1006, 1026-1027)


## STATEMENT OF THE CASE

Appellant filed suit pursuant to Texas Labor Code Sec. 21 et seq. for age discrimination based upon Defendant's failure to hire Appellant and Defendant hiring a substantially younger person for advertised Chair position in August of 2012. (CR 1: 5-11).

March 18, 2015: Order Denying Defendant's No-Evidence Motion for Summary Judgment was granted by Honorable Judge Rose Vela. (CR 1: 291). (Appendix 2)

March 25, 2015: Order Denying Defendant's Plea to Jurisdiction was granted by Honorable Judge Rose Vela. (CR 1: 292). (Appendix 3)

June 10, 2015: Order Granting Defendant Texas A&M University-Kingsville's Motion for Summary Judgment was granted by Honorable Judge Jack Pulcher. (CR 1: 1006) (Appendix1)

July 9, 2015: Appellant / Appellant Filed his Notice of Appeal. (CR 1: 1026-1027)

9

October 9, 2015: Appellant's Motion for Extension of Time to File Brief to October 23, 2015, was granted. (Appendix 4)

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves substantial amount of facts. Appellant submits that oral argument should be permitted and that it would aid this Court's decisional process to emphasize and clarify the written arguments in the briefs and to respond to any questions.

## ISSUES PRESENTED

**The Trial Court Erred in Granting Defendant's Motion for Summary Judgment Dismissing the Appellant's Lawsuit**

*\*Does Not Include Subsidiary Questions which are set out in the Argument*

I. The Trial Court Erred in Granting Summary Judgment Based on Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi

    A. Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi Was Not a Basis Used by Defendant in Not Hiring Appellant:

    B. Appellant was not prohibited from applying for the Chair opening by the 2006 Release and Settlement Agreement with TAMU Corpus Christi

II. The Trial Court Erred in Dismissing Appellant's Lawsuit

    A. Appellant Establishes Direct Evidence of Age Discrimination

    B. Appellant Establishes Circumstantial Evidence of Age Discrimination

1. Step One:  Appellant's Prima Facie Case

 (a)  Element No. 1:  Appellant is a member of a protected class

 (b) Element No. 2: Appellant was Qualified for the Chair Position

  (1) Appellant Met the Chair Positions Actual Required Minimum Qualifications

  (2) Appellant Met the Chair Positions Actual Preferred Qualifications

  (3) Appellant Met the Defendant's Alleged Required Qualifications

  (c) Element No. 3: Appellant was subjected to an adverse employment action

  (d)  Element No. 4: defendant hired  someone substantially younger than  Appellant

2. Step Three:  Appellant establishes Pretext:
 Appellant presents sufficient evidence to create a  genuine issue of material fact of either:

## STATEMENT OF FACTS

Appellant has filed an age discrimination action based on Defendant hiring a substantially younger person for the posted Endowed - Named Chair position in 2012.

February 20, 2012:  Defendant advertised  an opening for the Chair of the Department of Accounting and Finance. (CR 1: 780) The Chair Position's written job qualification requirements were:  (CR 1: 782 top)

11

<u>Minimum (actual required) Qualifications:</u>

> *"Candidates must have 18 graduate hours for every field in which they will teach. Candidates must be professionally qualified to (1) hold the rank of Full Professor and (2) be AACSB Academically Qualified (AQ).*

<u>Preferred Qualifications:</u>    *AACSB Accreditation*

AACSB is an acronym for "Association to Advance Collegiate Schools of Business". AACSB provides specialized accreditation for business and accounting programs at the bachelor's, master's, and doctoral level. AACSB Accreditation is a recognized form of specialized professional accreditation of an institution and its business programs.

Dr.Thomas Dock was the Dean of Department of Accounting and Finance beginning to Sept. 13, 2012, when Dock was removed as Dean. (CR 1: 667: p.12, line 25 to p.13, line 9; CR 1:876). During the selection process, Dr.Richard Aukerman was the Associate Dean and Search Committee Chair. (CR 1: 782)

At the time of applying: Appellant was sixty-six years old. (CR 1: 652, sec. 4). Appellant's academia career spanned 40 years including six years employed as an Assistant Professor, 15 years employed as an Associate Professor, and 18 years as a Full Professor. (CR 1: 799-800)

Defendant hired Carol Sullivan. who was fifty-one and substantially younger (15 years) than Appellant. (CR 1: 918: p.48, lines 2-7).

12

February 24, 2012: Appellant applied for the Chair position. (CR1: 799)

March 5, 2012: Carol Sullivan applies for the Chair position (CR1: 823)

Dean Dock informed Associate Dean Aukerman and Assistant Dean Martin Brittain that Dock was going to Carol Sullivan privately off campus; Both Dr.Aukerman and Brittain instructed Dean Dock that was wrong and not to meet Sullivan. (CR1: 728, p.43, line 14 to p.44, line 8)

March 20, 2012: Dean Dock ignores policy and drives to Victoria, Texas, to privately interview Carol Sullivan. (CR1: 834). Dean Dock arranged for Carol Sullivan to come to campus for interview despite the Search recommending not to interview Sullivan. (CR 1: 872, sec.10)

July 2012, the Faculty Search Committee met with Carol Sullivan and determined that Carol Sullivan was not qualified and 'unacceptable' for the Chair position. (CR1: 836-839).

July 16, 2012: Associate Dean Aukerman, notified Defendant's Hiring Manager that the College of Business Search Committee had determined that Sullivan was not qualified for the chair position. (CR1: 840)

August 6, 2012: Dean Dock notified the faculty that he had hired Carol Sullivan for the Chair opening and enter into a contract with Carol Sullivan who agreed to all terms of employment-- Associate Dean Aukerman and Provost Gandy are copied. (CR1: 842-844)

August 15, 2012:  Associate Dean Dr.Aukerman notified Defendant's Hiring Authority, that Dean Dock's hiring of Carol Sullivan had been an *"Inappropriate, unethical, and/or illegal actions of Dean Tom Dock"*. (CR1: 871; 872 sec.10)

August 16, 2012: Associate Dean Aukerman notified Provost Gandy that the department had determined that Sullivan was not qualified for nor acceptable for the Chair position: that *"the 9 faculty members who visited with Carol Sullivan said she was unacceptable for the Accounting Department Chair position, by a vote of 8-1."* (CR1: 846)

August 29, 2012:  Defendant notified *"the search has been successfully completed"* and Appellant *"was not the candidate selected for the position"*. (CR1: 852)

August 31, 2012:  Defendant identified on its official Applicant log that Carol Sullivan was the candidate 'hired'.  (CR1:885: Sullivan *'hired';* Vanzante *'not hired')*

Two years later,  on September 17, 2014:  Dock testified that Dock was the decision-maker and stated:  " *I hired Carol (Sullivan) as Chair of the Department of Accounting, and at the professorial rank of full professor".* (CR1: 665, p.6, lines 15-19) (CR1: 664 for date of deposition).

====================================

14

Ever since Dock's illegal selection / hiring of Sullivan, Defendant has been offering new and changing reasons for the selection / hiring of Sullivan to cover up the fact that its investigation had found that Dock's hiring Sullivan was an *Inappropriate, unethical, and/or illegal action.*

August 29, 2012: Appellant requested the reason that Appellant was not hired. (CR 1: 852 / 892)

September 13,2012: Defendant removed Dock as the Dean and Associate Dean Aukerman became Interim Dean. (CR 1:876) (CR 1: 724, p.29, lines 18-24).

Provost Gandy instructed Interim Dean Aukerman that Sullivan was the person hired for the Chair opening and go with it. (CR 1: 725, p.30, lines 3-9) (CR 1: 724, p.28, line 25 to p.29, line 11).

September 19, 2013: Interim Dean Aukerman sends memo to Defendant's HR Director and to Provost Gandy: (CR 1:927)

> *"Upon completion of the search process it was determined that*
> *Dr. Carol Sullivan was the most appropriate fit for our needs at this time. "*

Both Interim Dean Aukerman and Provost Gandy knew this reason was false at the time it was created to be placed in Defendant's hiring records. Dr.Aukerman and Provost Gandy had previously been informed by the Faculty Search Committee that Sullivan did not meet the position's required qualifications, was

15

not qualified and Dock's hiring of Sullivan was illegal. (CR1: 840) (CR1: 871; 872 sec.10) (CR1: 846)

Defendant did not reopen the chair selection process after Dock's removal as Dean and Dr.Aukerman testified that the position should have been re-advertised after Dean Dock received the faculty determination that Sullivan was not qualified to. (CR 1: 724, p.29, line 23 to CR 1:725, line 2). (CR 1: 723, p.25, line19 to CR 1: 724, p.26, line 20)

Aukerman, as Interim Dean, and Provost Gandy signed off on Dock's hiring of Sullivan. (CR 1: 739, p.86, lines 9-15)

===========================

## DEFENDANT'S FINDING AND KNOWLEDGE OF DEAN'S DOCK LACK OF CREDIBILITY AND DISHONESTY DURING SELECTION PROCESS

By August 15, 2012: Defendant had started investigating Dean Dock for serious misconduct. Associate Dean Dr.Aukerman had documented and reported to Assistant Dean Martin Brittain an extensive and detailed listing of 26 acts of *"Inappropriate, unethical, and/or illegal actions of Dean Tom Dock"*. (CR 1: 871-874).

Defendant had found that Dean Dock lied and made up reasons to hire Sullivan at the time of these events.

16

(8) <u>hiring of Carol Sullivan for the Accounting and Finance Department Chair</u> <u>position who was not recommended for interview by the search committee and</u> <u>who the faculty have voted 8 to 1 that Sullivan was *'unacceptable'*. *"Tom Dock*</u> *<u>had decided previously that he wanted to hire her.</u>"* (CR 1: 872, sec. 10)

<u>December 6, 2012</u>:  Defendant / TAMU System Auditor issues its Final Report. (CR 1: 878-879)

The TAMU System Auditor found: Thomas Dock as Dean had:

(1) <u>Falsification of University Records</u> that  rose to level of possible violations of the Texas Penal Code Sec.37.10, Tampering with a Governmental Record and forwarded for further criminal review. (CR 1: 878)

(2) <u>Misuse of Donor Funds</u>: Thomas Dock, as Dean, had misused and misappropriated money.(CR 1: 878-879)

(a) Dean Dock made approximately $5,000 in unallowable expenditures of donor funds; (CR 1: 878)

(b) the department had approximately another $63,700 in questionable  expenditures (CR 1: 879)

<u>January 14, 2013</u>:  Provost Gandy sent notice to Thomas Dock that  Dock, as Dean had engaged in activities of improper activity: 1) Falsification of University Records; 2)Misuse of Donor Funds, and 3) Unauthorized Work Locations. (CR 1: 881)

Dock was not terminated for these serious acts of fraud, misappropriation, falsification of documents. (CR 1: 881)

<u>Appellant's 2006 Release and Settlement with Texas A&M Corpus Christi</u>

In 2006, Appellant had a jury trial  against Texas A&M Corpus Christi wherein the jury found Appellant had returned a jury verdict finding that TAMU Corpus Christi had discriminated against Appellant on the basis of his age awarding Appellant lost wages. Appellant entered the Settlement and Release  with TAMU

17

Corpus Christi after specific sections were included that protected all Appellant's future rights of employment with TAMU Kingsville. (CR 1: 771-776, see 773, sec.3)

The 2006 Settlement and Release with Texas A&M Corpus Christi specifically provided that Appellant could apply for the position at issue in this suit at any time it came open: (CR 1: 778, sec. 3; same as CR 1:773, sec. 3).

## SUMMARY OF THE ARGUMENT

Defendant has alleged that it is entitled to a judgment as a matter of law--there are no factual disputes.

Appellant provides evidence that the 2006 Release and Settlement Agreement with TAMU Corpus Christi was not a reason Appellant was not hired and allowed Appellant to apply for the Chair opening.

Appellant provides evidence that: Appellant was qualified: met the Chair position's actual required minimum qualifications and preferred qualification; met each of the alleged qualifications raised in Defendant's Motion for Summary Judgment.

Appellant provides evidence that Defendant's legitimate non-discriminatory reasons are false and a pretext for discrimination.

Appellant provides evidence of Disparate Treatment of Appellant and the younger person hired, Carol Sullivan.

18

## ARGUMENT

### Standard of Review

The purpose of a summary judgment is to "provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact." *Rincones v. WHM Custom Serv*, 457 F.3d, 221, 236. citing *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (Tex. 1962).

The Appellate Court reviews a summary judgment de novo. *Rincones* at 236. citing *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.).

In deciding whether there is a genuine issue of material fact, evidence favorable to the non-movant is taken as true, and all reasonable inferences are made, and all doubts are resolved, in favor of the non-movant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997);

=========================================================================

**Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi was not a Basis to grant Summary Judgment**

**(A) Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi Was Not a Basis Used by Defendant in Not Hiring Appellant:**

Defendant alleges that Appellant's suit should be dismissed based there is not fact issue regarding Appellant being barred from filing this suit based upon a 2006 Release and Settlement Agreement.

Defendant's argument is not relevant to Defendant's MSJ to dismiss Appellant's discriminatory failure to hire claim:  Appellant's 2006 Release and Settlement Agreement with Texas A&M Corpus Christi *was not the or a basis that Defendant did not hire Appellant for the Chair position;* and cannot negate the discriminatory act of which Appellant complains: Defendant's wrongful act of hiring the younger applicant over the Appellant.

August 29, 2012:  Date Defendant notified Appellant of non-hire and that someone else had been hired. (CR 1:852)

January 7, 2013: the date Appellant would have started working. (CR 1: 780)

<u>Appellant's 2006 Release and Settlement Agreement with Texas A&M Corpus Was Not the Basis Defendant Did Not Hire Appellant</u>

February 20, 2012: Defendant posted an opening seeking applicants for Chair of the Department of Accounting to begin working January 7, 2013. (CR 1: 780-787).  Appellant, 66, applied;  Carol Sullivan (51) applied. (CR 1: 652, sec. 4).

20

Defendant hired Carol Sullivan, the substantially younger candidate. (CR 1: 652, sec.4)

Dean Dock testified *Carol, I hired Carol as Chair of the Department of Accounting, and at the professorial rank of full professor."* (CR 1: 666, p.6, lines 15-19)

August 6, 2012: Krueger testified that Dean Dock told the faculty that Dean Dock had selected and hired Sullivan. (CR 1: 697, p.24, lines 2-8)

August 6, 2012: Dean Dock hired and contracted with Sullivan: offered Sullivan the Chair position and Sullivan accepted. (CR 1: 842-844)

-- (Sullivan's acceptance on last page, (CR 1: 844)
*"I accept this proposal without any revisions. Thank you for the opportunities and I look forward to contributing to the excellence at Texas A&M-Kingsville."*
*"Respectfully,*

*Carol Sullivan (signature)*

Dean Dock then instructed Krueger, Defendant's Director of Research for the College of Business, to write the actual basis for hiring Sullivan and the basis for not hiring the other four applicants considered for the Chair position, which included Appellant. (CR 1: 697, p.24, lines 2-14)(CR 1: 848-Krueger's basis). (CR 1: 701, p.38, lines 8-12),

21

August 23, 2012     Dr.Krueger reviewed Appellant's application / resume and stated the reason and basis Appellant was not hired was: (CR 1: 1051, bottom; Vanzante, Neal)

> "*Professor Vanzante left teaching profession two years ago. Although he was a professor at Texas A&M University -- Kingsville for many years, his reference list does not include someone from this institution. Instead of helping Texas A&M University--Kingsville, he left to join a university that was already accredited. We are interested in someone who is willing to work here to make our CBA an AACSB--accredited institution.*"

(This was Dr.Krueger's determination and finding). (CR 1: 698: p.26: lines 5-16) (\*this paragraph is later deleted and rewritten by Dean Dock as shown below)

August 26, 2012: Martin Brittain (Defendant's Hiring Authority-CR 1: 781), identified, in its official Applicant History, that Defendant's basis  Appellant was not hired was: (CR 1: 888)

### Vanzante, Neal:

*Not Hired*:  "Other, *Was at TAMUK, but left. Reference list does not include anyone fro(m) TAMUK. Need someone who will work to help TAMUK achieve AACSB accreditation*". (CR 1: 888)

August 29, 2012:     Appellant was notified that he was not hired and then requested the reason he was not hired. (CR 1: 852)

Dean Dock instructed Krueger to change the reason Appellant was not hired-- that of the four non-hired qualified applicants, Dock only changed the reason for

22

not hiring Appellant: Dock's "*changes dealt with Neal Vanzante*" (CR 1: 697, p.25, line 15);

Dean Dock provided the new reason Appellant was not hired. (CR 1: 698, p.28, lines 10-15; CR 1: 701, p.39, line 23 to p.40, line 16).

Dock's new reason: (CR 1: 850)

*Dr. Vanzante does not meet the two salient position requirements: (1) professorial experiences that meet the current college expectations of a Full Professor and (2) AACSB Academically Qualified (AQ) status.*

\*this document is dated August 23, 2012, but the evidence above supports that Dock created this document after Krueger's original Aug 23, 2012, document, after Defendant's Aug 26, 2012, reason, and after Appellant's Aug 29, 2012, request for the selection basis.

Defendant has found that, during this same time period, Dock has a record of falsifying University documents.(CR 1: 878)

Summarizing: Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi is not relevant to Appellant's Discrimination Claim of Failure to Hire because it was not a basis for Defendant's decision not to hire Appellant

===================================================

## B. Appellant VanZante Was NOT Prohibited From Applying for the Chair Position by the 2006 Release and Settlement Agreement with TAMU-CC. (response to defendant's argument beginning CR 1:298)

The 2006 Release and Settlement Agreement ("Agreement") with TAMU-CC provided Appellant could apply for the Chair opening.

23

Appellant has produced evidence that the 2006 Release and Settlement Agreement with TAMU-CC provided that Appellant could apply for the opening with Defendant Texas A&M University Kingsville.

The last sentence in Section 3 of Appellant's 2006 Release and Settlement Agreement with TAMU Corpus Christi provides: CR 1: 778, sec. 3, last sentence sec. 3; CR 1: 773, sec.3, last sentence).

*"The Parties **further agree that this paragraph (Paragraph 3) shall not apply** to any applications Appellant may make to Texas A&M University-- Kingsville, for employment in positions such as an **endowed chair position that may become available after the execution of this agreement**."*

Appellant filed this action based upon discriminatory actions by Defendant TAMU Kingsville related to Appellant's application process and non-hiring of an endowed Chair position that became available after the execution of the 2006 Settlement and Release with TAMU Corpus Christi.

February 24, 2012: Appellant applied for a posted opening for the Chair of the Department of Accounting and Finance. (CR 1:799).

Defendant' job posting identified the opening as being *'the holder of a named Chair'*. (CR 1:781: job summary).

Dean Dock testified that *"a named Chair is an endowed Chair"*, and **the opening was for an endowed Chair.** (CR 1: 666 at p.9, lines 7-8; p.29, line 22 to p.30, line 3).

24

Paragraph 3, Last Sentence

Appellant knew that TAMU Kingsville had been wanting to have an Endowed Chair and TAMU Kingsville would continue to be working on establishing this position. (CR 1:658: sec.30). The Parties added the last sentence to Section 3 allowing Appellant an unqualified right to apply for an endowed chair opening without any restriction and not subject to any restriction. (CR 1: 658: sec.30)

The parties clearly put in writing and agreed in the last sentence of Section 3 as a stand alone provision:

*"The Parties further agree **that this paragraph (Paragraph 3) shall not apply** to any applications Appellant may make to Texas A&M University--Kingsville, for employment in positions such as an endowed chair position that may become available after the execution of this agreement."* (CR 1: p.776, last sentence sec. 3; same at CR 1: p.773, sec. 3--last sentence).

**IF** Defendant's changes, as set out in its Motion, were part of the terms in the 2006 Settlement and Release for Appellant's application to a Chair opening at TAMU Kingsville, **THEN** these terms would have been added to the wording of the 2006 Settlement and Release with TAMU Corpus Christi regarding Appellant's application for a Chair opening. (CR 1:660, sec.36; p. 659, sec. 35)

Appellant could have then accepted or rejected the limitation and wording. Appellant would have rejected any Settlement and Release that restricted

25

Appellant's right to return to work for Defendant or to apply for a Chair opening at TAMU Kingsville. (CR 1: 655 sec.15; p.654, sec.10)

Just the opposite: such a restriction and meaning, as now asserted by TAMU Kingsville, was not included and the TAMU Corpus Christi Settlement. The TAMU-CC Settlement and Release sets out the parties' intention regarding the Appellant's right to apply for the Chair opening at any time: that there is no restriction that Appellant be currently employed with the Defendant in order to be eligible to apply for an endowed Chair opening. (CR 1: 778, sec. 3, last sentence)

## Appellant's Departure to work at UTPA

The Release and Settlement Agreement was executed in September of 2006 (CR 1:776);

Beginning in early 2007, Appellant discussed with his Dean, Dr. Jane Stanford, Appellant taking a leave of absence from Defendant in order to gain the experience that would benefit TAMUK in its AACSB accreditation process. Defendant had been planning to seek AACSB accreditation. (para from CR 1: 654, sec.11-13).

Appellant had included a provision in the 2006 TAMU Corpus Christi Settlement and Release Agreement that specifically provided for this situation: (CR 778: sec.3)

26

*"The Parties further agree that, for the purposes of this Agreement, any actions or applications required of Appellant by Texas A&M University—Kingsville, including but not limited to applications for renewal of tenure and applications for summer teaching at Texas A&M University—Kingsville, shall be exempt from the restrictions set forth in Paragraph 3."*

In 2007, the opportunity arose that Appellant could work at University of Texas Pan American (UTPA) which was an AACSB accredited doctoral granting institution and UTPA was going through its AACSB re-accreditation process. (CR 1:p.654, sec.12).

Prior to leaving Defendant and submitting his resignation to work at the Univ. of Texas Pan American:

 (a) Appellant requested verification from both Dr. Kay Clayton (Provost) and Dr. Jane Stanford (Dean of the College of Business Administration) that the 2006 Settlement and Release Agreement allowed for Appellant's 'resignation" and "reapplication" with Defendant--TAMU Kingsville. (CR 1: p.654, sec.14);

 (b Appellant requested that both, Dean Stanford and Provost Clayton, contact TAMU System Attorneys to confirm that this would be acceptable under the 2006 TAMU Corpus Christi Settlement and Release Agreement. (CR 1: p.654, sec.14).

Dean Stanford instructed Appellant that Appellant resigning and returning at a later date would be acceptable to Defendant and acceptable under the 2006 TAMU Corpus Christi Settlement and Release Agreement. (CR 1: p.655, sec.14).

Dean Stanford told Appellant that Appellant's resignation from Defendant and returning work with the Defendant at a later date was acceptable to the Provost and the System. (CR 1:p.655, sec.15).

Appellant would not have left his position at TAMUK and would have rejected the offer to join the University of Texas Pan American if Defendant had not agreed that Appellant was allowed to resign in 2007 and return at a later date to work for Defendant under the 2006 Settlement and Release with TAMU Corpus Christi. (CR 1:p.655, sec.15). *"Dean Stanford told me* (Appellant) *that this was acceptable to the Provost and the System.* (CR 1:p.655, sec.15)

On June 1, 2007: After Appellant had received Dr.Stanford's confirmation: Appellant submitted his letter of resignation to Dean Stanford (Defendant) confirming that Appellant could resign and return to work for the Defendant in the future. (CR 1:p.789)

June 4, 2007: Dean Stanford, on behalf of President Juarez and Provost Clayton, accepted Appellant's letter of resignation and right to return to work for the Defendant at a later date. (CR 1:p.789) Defendant's agents and representatives to the email were: (CR 1:760, p.57, line 20 to CR 1: p.59, line 11)

| | |
|---|---|
| Jane Stanford: | Interim Dean of College of Business |
| Stuart Isdale: | Defendant's Director of Human Resources |
| Kay Clayton: | University Provost |
| President Juarez: | President of the University |
| Pamela Trant: | Senior Administrative Assistant |

28

Robert Diersing:        Former Dean of College of Business
Ms.Guajardo:            University Office Manager
Richard Aukerman:       Department Chair,

## Defendant's Own Records Evidence that Appellant Was Not Barred From Leaving and Returning to Work for Defendant

June 7, 2007: Defendant accepted Appellant's letter of resignation and right to return to work for Defendant at a later date. (CR 1:789)

Thereafter Defendant accepted Appellant's applications for openings at TAMU Kingsville after 2007.

October 18, 2010: Following Appellant's application for Department Chair, Defendant notified Appellant of non-selection and adds "*we hope you will continue to give our institution consideration for employment*". (CR 1:p.791)

March 29, 2011: Following Appellant's application for Assistant Professor, Defendant notified Appellant that Defendant did not hire anyone for the Assistant Professor position and adds "*we hope you will continue to give our institution consideration for employment*". (CR 1:p.792)

August 29, 2012: As concerns the Chair position at issue in this suit: Defendant notified Appellant of non-selection and informs Appellant: "*we hope you will continue to give our institution consideration for employment*". (CR 1:p.793)

29

---------------------------------------------

## Section 3: "Paragraph 2"

Appellant was first provided a Version of the Settlement and Release that contained only the one paragraph, number 3, which was unacceptable because it did not protect Appellant's employment at TAMU Kingsville where Appellant had taught for over 18 years. (CR 1: 656: sec.23)

TAMUK officials (Department Chairs, Deans, and Provost Kay Clayton) and Appellant had been discussing for several years the benefit to TAMUK of Appellant taking a "leave of absence" and the fact the leave would require a "resignation" followed by a "reapplication" if the period was for more than one academic year. The specific benefit to TAMUK was considered to be the first hand AACSB experience for Appellant, Defendant's senior accounting faculty member who would then bring this experience back to TAMUK for purposes of pursuing AACSB accreditation. For that reason, it was important to exclude TAMUK from the prohibition of the stand-alone paragraph 3. (para from CR 1: 656-657: sec. 24)

The next version of the Release offered was a two sentence paragraph (marked TAMU-002126). Appellant accepted wording that Appellant was not required to resign at Tamu Kingsville where Appellant was a Professor of Accounting. Appellant objected to the rest of the paragraph as is because it did not set out the

conditions Appellant required to protect his opportunities as Tamu Kingsville where Appellant had taught for over 18 years. (para from CR 1:657: sec. 25)

Appellant had already had discussions with the TAMU Kingsville, as set out above, regarding Appellant taking action of leaving TAMU Kingsville to obtain AACSB accreditation and AACSB accreditation experience  (which TAMU Kingsville needed in its AACSB accreditation process) and then returning to TAMU Kingsville. TAMU Kingsville would require Appellant and its professors to become AACSB AQ in its accreditation process. (CR 1:657, sec.26).

The Parties then agreed to insert the next to last sentence which  clearly clarified Appellant's right to take any action necessary to maintain his current position which was going to be required by TAMU Kingsville to become AACSB AQ accredited. (CR 1: 658: sec.28)


Sec.3: Next to Last Sentence:  (CR 1: 778, p.3, sec. 3; p.774, sec. 3)

*The Parties further agree that, for the purposes of this Agreement, any actions or applications required of Appellant by Texas A&M University--Kingsville to maintain his current position of Professor of Accounting, including, but not limited to applications for renewal of tenure, applications for summer teaching at Texas A&M University--Kingsville, shall be exempt from the restrictions set forth in Paragraph 3."*

The third sentence clearly states that "any actions or applications" required to maintain Appellant's current position" shall be exempt.  This wording specifically allowed for TAMUK and Appellant  to take the "action" which would allow for

31

Appellant's "reapplication" following Appellant gaining the first-hand AACSB experience and getting a record of being AACSB AQ. (para from CR1:658: sec.28)

---------------------------------

## II. The Trial Court Erred in Dismissing Appellant's Age Discrimination Lawsuit

### A. Appellant Establishes Direct Evidence of Age Discrimination

Appellant submits that he has provided direct evidence to support a factual issue for a jury to determine Appellant's action for age discrimination.

If a material fact is supported by direct evidence, then the issue must be submitted to the jury. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 753-54 (Tex 1975)

Pattern Jury Charge 100: "a fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken." PJC 100

Appellant filed a failure to hire cause of action based the wrongful hiring of Sullivan and Defendant hiring a substantially younger person--Sullivan (age bias)

32

Expressions may be "direct evidence" of motivation "when they are related to the specific employment decision challenged, and made close in time to the decision." *Quality Dialysis, Inc. v. Adams*, 2006 Tex. App. LEXIS 4921,

## Documentary Evidence

Defendant admits Dean Dock's Hiring of Carol Sullivan was Wrongful / Illegal

Defendant's internal investigation conducted at the time of the failure to hire Appellant and the hiring of Carol Sullivan determined that the hiring was an ***"Inappropriate, unethical, and/or illegal actions by Dean Tom Dock"***. (CR 1: 872, sec. 10)

August 15, 2012: Associate Dean Aukerman notified and warned Martin Brittain, the Defendant's Hiring Authority for the Chair selection process, that Dean Dock's hiring of Carol Sullivan was inappropriate, unethical, and/or illegal. Dr.Aukerman determined that: : (CR 1: 872, sec. 10)

Sec (10) *hiring of Carol Sullivan for the Accounting and Finance Department Chair position who was not recommended for interview by the search committee and who the faculty have voted 8 to 1 that Sullivan was 'unacceptable'. "Tom Dock had decided previously that he wanted to hire her."* (CR 1: 872, sec. 10) (*Defendant produced this document after Dr.Aukerman's deposition)

### Defendant admits facts to establish age as basis / motivating factor
### for wrongful hiring of Sullivan

Defendant admits that Sullivan, the person hired, was substantially younger than Appellant (CR 1: 301, sec. A). Appellant has also provided evidence to

33

support a finding of age bias: Sullivan was significantly younger, 15 years, than Appellant. (CR1: 871, 872 sec. 10).

Defendant's admissions establish a factual issue for a jury and support a finding of wrongful age discrimination in this matter.

# PLAINTIFF ESTABLISH CIRCUMSTANTIAL EVIDENCE OF DISCRIMINATION

To establish a prima facie case of employment discrimination the Appellant must show:
> (1) he was a member of a protected class,
> (2) he was qualified for his employment position,
> (3) he was subject to an adverse employment decision, and
> (4) he was replaced by someone outside of the protected class, or
> he was treated less favorably than similarly situated members of the opposite class (disparate treatment cases)." *Rincones v. WHM Custom Serv,* 457

SW3d 221, 234 citing *Michael v. City of Dallas,* 314 S.W.3d 687, 690-91 (Tex. App.—Dallas 2010, no pet.)

If the Appellant establishes a prima facie case, then the burden shifts to the defendant to "produce evidence that the Appellant was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

**Step One:**

### Element No. 1: Appellant is a member of a protected class

Defendant does not contest this element. (CR 1: 301, sec.II, A)

Appellant was 66 years of age at the time of the employment decision not to hire

Appellant for the advertised Chair of the Department position,. (CR1: 652: sec. 4).

Texas Labor Code Sec. 21.101 defines the protected class of age as "an individual

40 years of age or older".

## Element No. 2: Appellant was qualified for the Chair position,

**Appellant met
the Chair position's actual required minimum qualification requirements;**

**Actual Job Posting
Stated 'Required Minimum' and 'Preferred Qualifications'
(Current Employment Not Requirement)**

The Chair Position's written job posting: (CR 1: 782 top)

Minimum (actual required) Qualifications:

> *"Candidates must have 18 graduate hours for every
> field in which they will teach. Candidates must be
> professionally qualified to (1) hold the rank of
> Full Professor and (2) be AACSB Academically
> Qualified (AQ).*

Preferred Qualifications:     *AACSB Accreditation*

35

# CHAIR POSITION'S MINIMUM REQUIRED QUALIFICATION NO. 1

**Appellant was Professionally Qualified to hold the rank of Full Professor**

**Dr.Richard Aukerman,**
**Search Committee Chair and Associate Dean of the Department**

Assoc.Dean Aukerman provides evidence that Appellant met all Defendant's requirements to be hired as a Full Professor.

Dr.Aukerman began employment with the defendant in 2002; promoted to Chair of the Department of Accounting and Computer Information Systems in 2002; then promoted to Interim Dean of the College of Business Administration in January 2009; became Associate Dean of College of Business Administration (2nd highest ranking administrator) in July 2010 after Thomas Dock was hired as the Dean; was promoted back to Interim Dean in September of 2012; became Associate Dean in September of 2013. (Ex. 4: p.10, line 19 to p.13, line 5).

Dr.Aukerman testified that, while employed with the Defendant, Dr. Aukerman had been involved in "lots' of faculty hirings either as being "*on search committees or chair of a search committee, or doing the hiring as an Interim Dean*" and involved in majority of the hiring "*more than half of the faculty that are currently in the college*", at least 9 or 10 hirings. (CR 1: 722, p.19, line 25 to p. 20, line 19).

36

Dr. Aukerman had first-hand knowledge of working with Appellant for six (6) years: 2002 to 2007. (auk: p.8, lines13-19; p resume, p. ) (CR 1: 782 mid page).

Assoc Dean Aukerman, testified, based on Aukerman's experience with Defendant's hiring process, evaluating applicants, his administrative experience, and, after reviewing Appellant's application -- resume, that:

<u>Appellant was qualified to be hired as a "*Full Professor*"</u>.

(see CR 1: 738, p.82, lines 5-21)(Appellant's application at CR 1: 797-819; teaching employment history at CR 1: 800).

Aukerman reviewed his deposition testimony, confirmed Appellant was qualified to be a Full Professor: made no changes to this testimony and made other corrections. (CR 1: 741-742)

Appellant's cover letter / resume set out Appellant's work history including that Appellant's most last teaching position was as Associate Professor of Accounting, University of Texas Pan American, Edinburg, Texas, September, 2007 to May of 2010. (CR 1: 799, 800) Appellant applied for the Chair position in February of 2012. (CR 1: 797-919)

Aukerman establishes that Appellant's break in classroom teaching time and not being currently teaching at time of applying was not relevant to and does not prevent Appellant from being qualified to be hired as a Full Professor. (CR 1: 738, p.82, lines 5-21)(Appellant's application at CR 1: 797-819; teaching employment history at CR 1: 800).

37

===========================================

<u>Additional Evidence to find Appellant was Qualified to Hold the Rank of Full Professor</u>

Appellant has been qualified by as a Full Professor by Defendant for 18 years :

1999 to 2007 (CR 1: 799-800; CR 1: CR 1: 651, sec 2)

Appellant was employed by the Defendant from August, 1989 through the summer of 2007. Defendant's policy on appointments to a Full Professor are set out in Defendant's Faculty Handbook, Sec. B.4.1.6(b). (CR 1: 651, sec. 3; CR 1: 911) Defendant's Faculty Handbook required the individual to have held the rank of Associate Professor (or higher) for at least five years prior to being eligible for appointment to Full Professor. (Ex. 1: p.2, sec. 3; Ex.36-3 ---tamu 0196)

<u>Appellant met this and all qualifications to hold the position of Full Professor</u>

Defendant had qualified and employed Appellant in the rank of Full Professor for 18 years. (CR 1: 799-800 -applic / resume; CR 1: 650-651, sec. 7; CR 1: 653, sec. 10).

===========================================

**CHAIR POSITION'S MINIMUM REQUIRED QUALIFICATION NO. 2**

**APPELLANT WAS AACSB ACADEMICALLY QUALIFIED**

**Dr. Aukerman**
**Associate Dean Aukerman, Chair of the Search Committee,**
**Testified Appellant Met Defendant's AACSB Academically Qualified Requirements**

38

Association Dean Aukerman was the Chair of the Chair Search Committee. (CR 1: 782 mid page).

Assoc. Dean Aukerman testified that, while employed with the Defendant, Dr. Aukerman had been involved in "lots' of faculty hirings either as being "*on search committees or chair of a search committee, or doing the hiring as an Interim Dean*" and involved in majority of the hiring "*more than half of the faculty that are currently in the college*", at least 9 or 10 hirings. (CR 1: 722, p.19, line 25 to p. 20, line 19).

February 24, 2012: Assoc Dean.Aukerman informed Appellant, that to meet requirement to be AACSB Academically Qualified, the Defendant required a minimum of three (3) publications from 2009 to the time of applying in 2012. (CR 914). In the period from 2009 to applying in 2012, Appellant had published eight peer reviewed articles, including eight listed in Cabels with acceptance rates less than 30%. (CR 1: 803-804 -- resume; CR 1: 652-653, sec. 7)

Assoc. Dean Aukerman reviewed Appellant's resume, publication record and the AACSB Section 10 accreditation standards: Aukerman then testified that:

Appellant was and met the Defendant's AACSB Academically Qualified requirements for the position. (CR 1: 738, p.82, lines 2-20).

39

Aukerman reviewed his deposition testimony, confirmed this testimony that Appellant was AACSB Academically Qualified: made no corrections. (CR 1: 741-742)

====================================

**Additional Evidence**
**Appellant Was Classified as AACSB AQ**
and
**Satisfied Defendant's AACSB AQ Standards**

Appellant was employed at Univ. of Texas Pan American (UTPA) , from 2007, to May 2010. UTPA is an AACSB accredited university and Appellant was certified AACSB AQ status during his employment at UTPA and gained AACSB accreditation knowledge during employment at the UTPA. (CR 1: 890)(CR 1: 660-61, sec. 39-40). (CR 1: 652, p.3, sec. 5)

Defendant TAMU-K was a Master's Degree granting university. UTPA was a doctoral degree university. Dean Dock testified that the AACSB AQ standards at UTPA, a doctoral degree granting university, would be more stringent that defendant's standards, a masters degree granting university. ( CR 1: 682: p.72, lines 10-15) (see also CR 1: 652, sec. 5 of Appellant's Affidavit).

40

Dr. Krueger was defendant's Director of Research, whose job was to analyze research for AACSB purposes, at the time of the hiring selection in this lawsuit. (Ex.3: p. 67, lines 17-23).

Both Dr.Krueger and Assoc. Dean Aukerman establish that Appellant needed only 3 articles in the prior five year period to meet AACSB AQ accreditation standards. (Ex.3: p.37, lines 17-23). Ex. 37: feb 24 email

<u>Appellant's publications vastly exceeded the amount required for AACSB AQ status:</u>  In the immediate three year period (2009-2012) prior to Appellant's application to Defendant, Appellant  had a total of eight acceptable quality publications (all of which were in journals with acceptance rates of less than 30%). (Ex. 1: p.3, sec.6)(Ex.11: Appellant's application).

## Appellant met the Position's Preferred Qualifications

The Chair Job Posting identified the position's preferred qualification as:  page 3. (CR 1: 782)

### *Preferred Qualification:    AACSB accreditation*

Appellant was formally accredited as AACSB Academically Qualified at the time of his application process. (CR 1: 890, 799, 800; CR 1: 652, sec. 6

<u>Younger Applicant:  No record of being AACSB AQ accredited</u>

41

Carol Sullivan, the younger applicant hired, had no record of being AASCB accredited. (CR 1: 821-832)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT's
## REASONS
## FOR THE ACTUAL HIRING DECISION

### Defendant's Motion for Summary Judgment alleges more new reasons for its Decision not to hire Appellant

Defendant's Motion for Summary Judgment alleges new reasons, which *were not part of the actual selection and hiring decision*, process that Appellant was not qualified for the position and that Sullivan was the most qualified.

Defendant's new reasons are:

(1) Appellant did not meet the 'general qualifications' of 'leadership, administration, and interpersonal and professional communication'. (CR 1:301-302, sec. A, i)

(2) Appellant was not qualified to hold the rank of Full Professor based on a new position required qualification that applicant must be 'a professional, a facilitator, and a trustee'. (CR 1: 303-304, sec. i)\

(3) Appellant was not AACSB Academically Qualified based on a new position required qualification that Appellant must be continuously employed at the time of application or Appellant would not be AACSB Academically Qualified. (CR 1: 304-305, sec. ii).

*Defendant asserted this same *'continuously employed'* argument and presented the same exhibits to Judge Vela who denied Defendant's Plea to Jurisdiction and No-Evidence Motion for Summary Judgment. (CR 291, 292) ( CR 1: 23-111-- Defendant's Argument and Evidence)

42

Appellant provides evidence that:

(b) Appellant met Defendant's MSJ's new qualification requirements;

(c) Defendant's new required qualification requirements were not used in the actual hiring decision-making process;

(d) Defendant's new required qualification requirements are based on ten to fifteen year old documents that were part of the application process and were not used in the actual hiring decision-making process;

(e) Disparate Treatment: Defendant's MSJ's new qualification requirements were not applied to younger candidate hired (Sullivan): Defendant determined Sullivan did not meet required qualifications

Defendant Admitted to the EEOC Investigator
that Appellant met all required Qualifications for the Chair Position
that Defendant alleges Appellant did not meet

Defendant had actually determined that Appellant met the minimum requirements to be: professionally qualified to (1) hold the rank of Full Professor and (2) be AACSB Academically Qualified (AQ), that Defendant's MSJ asserted Appellant did not meet.

Defendant admitted to the EEOC that Appellant met the Chair position's minimum required qualifications. (CR 1: 865-866)

*"The application system determined three applicants did not meet minimum qualificatation, leaving five candidates who did meet minimum qualifications. These were:*

43

*Dr.Neal Vanzante"*
plus 4 others


Defendant's Written Job Posting identified the 'Minimum Qualifications' as: (CR 1: 782)

Candidate must be professionally qualified to:

(1) hold the rank of Full Professor and
(2) be AACSB Academically Qualified (AQ).


## Defendant's New Reasons Were not a Basis in the Actual Hiring Decision-making Process

### Defendant's Written Basis for the Not Hiring Appellant

August 6, 2012: Dean Dock announced to the faculty that Sullivan was hired for the Chair position --- that Dean Dock hired Sullivan. (CR 1: 697: p.24, lines 2-8)    After Dean Dock's announcement that Sullivan was hired, Dean Dock instructed Krueger to write the basis for hiring Sullivan and the basis for not hiring the other four applicants considered eligible for the Chair position, which included Appellant. (CR 1: 697, p.24, lines 2-14)(CR 1: 848).

August 23, 2012: date of Dr.Krueger's determination of the reason and basis Appellant was not hired was: (CR 1: 848, bottom; Vanzante, Neal)

> *"Professor Vanzante left teaching profession two years ago. Although he was a professor at Texas A&M University -- Kingsville for many years, his reference list does not include someone from this institution. Instead*

44

*of helping Texas A&M University--Kingsville, he left to join a university
that was already accredited. We are interested in someone who is
willing to work here to make our CBA an AACSB--accredited institution."*

August 26, 2012: Defendant identified the same basis Appellant was not hired
was: (CR 1: 888)

Vanzante, Neal:

*Not Hired:* "Other, *Was at TAMUK, but left. Reference list does not include
anyone fro(m) TAMUK. Need someone who will work to help
TAMUK achieve AACSB accreditation".* (CR 1: 888)

August 29, 2015: Appellant made an *'official request'* for the reason
Appellant was not hired. (CR 1: 852: top email).


## Of the Four Non-Selected Applicants:
## Dean Dock instructed Krueger to change ONLY the basis for not hiring Appellant


There were five applicants considered qualified for hiring. (CR 1 848, 850).

Krueger testified that there a pool of five applicants considered for the position.
(CR 1: 700, p.40, lines 3 to 5). The five qualified applicants considered for the
position were: (CR 1: 850, 848)

Carol Sullivan
Ghosh, Dilip
Haque, Mohammed
Robbani, Mohammad
Vanzante, Neal

45

As to qualified candidates not hired: Dean Dock only changed the reason for not hiring Appellant (Neal Vanzate); Dock did not change the reasons for the other three candidates considered for, but not hired for, the Chair opening. (CR 1: 850, 848)(CR 1: 697, p.25, line 15).

## Dean Dock's New Reason Appellant was Not Hired

Dean Dock removed Krueger's entire determination and replaced it with: (CR 1: 850)

*Vanzante, Neal:*

> *Dr.Vanzante does not meet the two salient position requirements:*
> *(1) professorial experiences that meet the current college expectations of a Full Professor and (2) AACSB Academically Qualified (AQ) status.*

This is in a document dated August 23, 2012. (CR 1: 850). Appellant submits that the above facts and timeline support an inference that Dean Dock changed the reason for Appellant's hiring after Appellant's August29, 2012, request Defendant to produce the hiring basis.

During this time period, Defendant had found that Dock falsified records, misused funds and lied about other employment hirings. (CR 1: 871-874; 878-879)

===========================================

## KRUEGER'S BASIS APPELLANT WAS NOT HIRE INFERS PLIANTIFF MET THE POSITIONS TWO REQUIRED QUALIFICATIONS

The Chair Job Posting identified two required Minimum Qualifications: (CR 1: 782)

Minimum Qualifications:   "Candidates must have 18 graduate hours for every field in which they will teach. Candidates must be professionally qualified to (1) hold the rank of Full Professor and (2) be AACSB Academically Qualified (AQ).

The evidences supports the fact that: Dr.Krueger, Defendant's Director of Research, reviewed Appellant's application as applied to the job requirements, and determined Appellant met the two salient position requirements: (1) professorial experiences that meet the current college expectations of a Full Professor and (2) AACSB Academically Qualified (AQ) status BUT WAS NOT HIRED for "other" reasons: (CR 1: 848)

> *"Professor Vanzante left teaching profession two years ago. Although he was a professor at Texas A&M University -- Kingsville for many years, his reference list does not include someone from this institution. Instead of helping Texas A&M University--Kingsville, he left to join a university that was already accredited. We are interested in someone who is willing to work here to make our CBA an AACSB--accredited institution.*

Dr.Krueger did not find that Appellant did not meet the position's required minimum requirements. (CR 1: 848; 782- job posting)

The evidences supports the fact that: Defendant's Hiring Authority determined Appellant met the two salient position requirements: (1) professorial experiences

47

that meet the current college expectations of a   Full Professor and (2) AACSB Academically Qualified (AQ) status    BUT WAS NOT HIRED for "other" reasons: (CR 1: 888)

> Other, *Was at TAMUK, but left. Reference list does not include anyone fro(m) TAMUK. Need someone who will work to help TAMUK achieve AACSB accreditation"*. (CR 1: 888)


## DEFENDANT'S NEW GENERAL QUALIFICATION REQUIREMENT
## of
## Leadership,Administration, Interpersonal and Professional Communication

Defendant's Motion for Summary Judgment alleged Appellant was not qualified because :   *'Appellant did not meet general qualifications'*   of Leadership, Administration, Interpersonal and professional communication. (CR 1: 301-302).

These newly asserted requirements were not used in the decision to hire the Chair and not part of the hiring decision process.

Defendant's alleged required qualification of skills of   Leadership, Administration, Interpersonal and professional communication   (CR 1: 301-02) were not part of the actual position's posted required minimum or preferred qualifications and not considered during the selection process identified in the Job Posting under 'Minimum Qualifications' and 'Preferred Qualifications'.(CR 1: 782)

Appellant incorporates his facts in the decision process set forth above in support.

48

## New Requirements of
## Leadership,Administration, Interpersonal and Professional Communication
## Not Applied to Younger Candidate Selected

Evidence also supports a finding that defendant did not use these alleged general qualifications in the decision-making process as they were not applied to Sullivan, the younger applicant hired, whom Defendant's Search Committee and Chair had determined did not meet the position's required qualifications—thereby not meeting these alleged general qualifications' of Leadership, Administration, Interpersonal and professional communications. (CR 1: 836-838, 840, 846).

===============================================

## **APPELLANT MET THIS REQUIREMENT**

Appellant provides evidence that Appellant met
the alleged basis of general requirements for Full Professor
of Leadership, Administration, Interpersonal and professional communications.

Appellant possessed these skills in Leadership, Administration, Interpersonal and professional communication" as shown in Associate Dean Aukerman's testimony Appellant was qualified to hold the position of Full Professor, had held the position of Full Professor with the Defendant for 18 years, and Appellant's application resume.

49

Associate Dean Aukerman had worked in the College of Business with Appellant from about 2002, to 2007, and had first-hand knowledge of Appellant's skills. (CR 1: 720, p.10,line 19, to p.13, line 5).     Aukerman testified Appellant possessed skills of 'Leadership, Administration, Interpersonal and professional communications' (CR 1: 719, p. 8, line 13 to p.9, line 12):

Q: Okay.  Do you know Dr. VanZante?

A:  Yes.

Q   And how did you come about --

A   Well, initially I met him because we both
worked in the College of Business Administration.  He had  been here a few
years when I was hired.  And that would have been in 2002.

Q   Have you ever written any letters of reference for Dr. VanZante?

A   Yes, I have.

Q   And have you ever nominated Dr. VanZante for like something called a
Regents Professorship?

A   Yes.

Q   What is that?

A   That's an award that the A&M system gives to faculty members who have
performed above and beyond the call of duty, I guess you could say, in, over a
number of years at the university.

Q   And what about any nominations for outstanding faculty here at TAMU-
Kingsville?  Have you ever --

A   Well, I remember I nominated him for an Outstanding Educator award for the
State Accounting  Association.  I honestly don't remember if I've done that
for an on-campus teaching award or not.  I don't recall. But I know I did for
the State Accounting Society.

=======================

50

## Appellant's Application and Resume

Appellant's Employment with the Defendant established that Appellant possessed these newly alleged general requirements of "Leadership, Administration, Interpersonal and Professional Communication".

Appellant's application and resume provides sufficient evidence that Appellant possessed skills of Leadership, Administration, Interpersonal and professional communication.

The employment decision not to hire Appellant was made in August of 2012.

From 2001 to 2007 Appellant received above Exceptional Annual Evaluations each year. (CR 1: 660, sec. 38) (CR 1: 817)  January - December 2005: Appellant received above exceptional evaluation. (CR 1: 859)    January - December 2006: Appellant received above exceptional evaluation. (CR 1: 860)

Appellant's application evidenced that, from 2003 to 2012, Appellant received consistent performance and achievement awards while employed by Defendant and thereafter: (CR 1: 816)

### Honors and Achievements

### While employed with Defendant: (CR 1: 816)

Texas A&M University-Kingsville, College of Business Administration, Students' Choice Distinguished Teaching Award (May 2003).
Texas A&M University-Kingsville, President's Senior Faculty Research and
    Scholarly Excellence Award (March 2004).
    This award was only given in 2004.
Texas Society of Certified Public Accountants, Outstanding Accounting
    Educator Award (2005).
Corpus Christi Chapter of the Texas Society of Certified Public Accountants,

51

<u>2007 to 2012(CR 1: 816)</u>

Outstanding Service Award (2007-2008).

Southwest Region of the American Accounting Association, Outstanding Educator Award (2009).

Institute of Management Accountant's Lybrand Certificate of Merit Award for outstanding character and excellence in contributing to the literature for the advancement of management accounting and financial management. (2011).

<u>Appellant's Service with Defendant for most recent 12 Years</u> (CR 1:815)

Beginning in 1990, through 2007, Appellant was a member of twelve (12) Defendant College of Business Committees, including five (5) promotion, tenure, search committees, a University Promotions Appeal Committee (2005), Presidential Travel Support Committee (2005-2007), Accounting Faculty Search Committee as both Chair and member. (2003, Chair, 2004, and 2006 member)

**Teaching Excellence** (CR 1: 817)

<u>Teaching Record with the Defendant:</u> (CR 1: 817)

While employed with Defendant from 1989 to 2007, Appellant's overall student evaluations were significantly higher than the Department of Accounting, College of Business and University averages. (CR 1: 817, mid page)

<u>Teaching Record with Univ of Texas Pan American 2007 to 2010:</u> (CR 1: 817, top)

Appellant's overall student evaluation was 4.62 on a 5 point scale.

52

## Professional Service in Appellant's Field of Accounting

, Appellant served on board of directors and committees of nonprofit organizations, providing professional services for the Texas State Board of Public Accountancy, and serving on editorial boards. (CR 1: 814, top).

## Disparate Treatment
### Defendant did not apply these 'general qualifications' to the Younger Person Hired:   Carol Sullivan,
------
**Defendant's Own Records Establish Carol Sullivan did not possess these 'general qualifications' of Leadership, Interpersonal and Professional Communications**

The Chair Search Committee members' actual evaluations of Sullivan establish Sullivan did not possess this newly alleged general qualification  of 'Leadership, Administration, Interpersonal and professional communications' The Chair Search Committee members made the following written factual findings:

(1)  Determined that Sullivan  did not meet the position's required qualifications and not acceptable for the Chair position finding: (CR 1: 838)

   (a)  *"Odd personality (which isn't necessarily a weakness but seem too much like  the person who just left the position we are trying to fill...)"*

   (b) *"Don't think that she would be able to work well with our students."*

(2)  Determined that Sullivan did not meet the position's required qualification and not  acceptable for the Chair position finding that Sullivan did not exhibit a positive feel to others:(CR 1: 837)

53

(3) Determined that Sullivan did not meet the position's required qualifications and not acceptable or the Chair position : (CR 1: 836)

Associate Dean Aukerman, the Chair of the Search Committee, determined Sullivan did not meet qualification requirements for the Chair opening: therein did not possess these same newly alleged general qualifications of 'Leadership, Administration, Interpersonal and professional communications'.

(1) July 16, 2012: Associate Dean Aukerman notified the Hiring Manager that the faculty had determined Sullivan did not possess required qualifications and Sullivan was not qualified to be hired. (CR 1: 840)

(2) Aug 15, 2012: Dr.Aukerman notified the Hiring Manager that Dean Dock's hiring of Carol Sullivan was an *"Inappropriate, unethical, and/or illegal action"*. (CR 1: 871, 872 sec.10)

(3) August 16, 2012: Dr.Aukerman notified Provost Gandy that Sullivan did not meet the position's qualifications and not qualified to be hired.(CR 1:846)

### Sullivan's Employment as Chair Confirm the Findings that Sullivan did not posses these alleged 'general qualifications'

On or about August 22, 2013: Sullivan assumed Department Chair position. (CR 1: 842).

October 31, 2013: Provost Gandy removed Sullivan as the Department Chair, to be effective immediately. (CR 1: 854)

November 19, 2013: Provost Gandy issued Sullivan notice that her employment would end and the end of her contract in May 2014. (CR 1: 856-857)

54

=====================================================

<u>Defendant's Supporting Evidence was Not Used or Relied upon by Decision-makers in Not Hiring Appellant</u>:

Defendant's exhibits were not used in the actual decision making process and are dated 1997 to 2002 and. The applicants submitted only a cover letter and resume during the application process. (CR 1: 797-819 Appellant applic; CR 1: 821-832--Sullivan applic)

Dr.Krueger testified that the basis for hiring Sullivan and not hiring Appellant was based solely on a review of their applications. (CR 1: 697, p.15-22)

Appellant's application did not contain the information or these documents that defendant now uses to assert this new reason. (CR 1: 797-819)

---------------------------

Defendant relies upon documents taken out of context and dated 1997 to 2002. Defendant Exhibits 10, 11, 12, 14, 15 to support its argument. None of these exhibits were part of the actual decision-making process as shown above.

   (a) <u>Defendant MSJ Exhibit 15 </u>(CR 1: 477):
   (b)<u>Defendant MSJ Exhibit 12 </u>(CR 1: 375-376):
   (c) <u>Defendant MSJ Exhibit 10 (CR 1: 366-371</u>):
   (d)<u>Defendant MSJ Exhibit 11 (CR 1: 373</u>):
   (e) <u>Defendant MSJ Exhibit 14 (CR 1: 475</u>):

=================================

55

**Defendant's Alleged Basis that required qualification was
a professional, a facilitator, and a trustee
to hold the Rank of Full Professor
(Def MSJ: CR 1: 303, sec. ii, i)**

Appellant Met this Qualification of a professional, a facilitator, and a trustee to o
hold the rank of Full Professor

Defendant's MSJ alleged a new required qualification that a Full Professor was

"a professional, a facilitator, and a trustee." (CR 1: 303 =DMSJ sec i) Defendant

bases these new qualifications on Def. MSJ Ex. 13. (See CR 1: 303, sec. i; ex. 13

at CR 1: 378-473)

Def's MSJ asserts that Appellant must be "a professional, a facilitator, and a

trustee." (CR 1: 303) Defendant bases this assertion on Def Ex. 13.

No testimony supports this assertion.

Def.MSJ Exhibit 13 is a draft document
originating from University of Wisconsin
Not Defendant's Policy in Use

Defendant's MSJ uses its Exhibit 13 as the basis to assert these new

qualifications. (CR 1: 303, sec. i, 1st para). Def. MSJ Exhibit 13 is located at CR

1: 377-473.

Appellant submits a jury could find from the evidence that Defendant has both,

made up this reason and presented a fabricated document, to support this

fabricated reason.

56

Def's MSJ Ex. 13, was not in use by or the Defendant's adopted policy during these events.

Prior to being hired by Defendant, Dean Dock was employed at the University of Wisconsin -Eau Claire. (CR 1: 666: p.8, line 22 to p.9, line 4). The actual exhibit shows that Exhibit 13 is a document from the University of Wisconsin (UW) MBA program and was in draft form.

(1) Def MSJ Ex. 13, p.17, top sec.: *"The University of Wisconsin MBA Consortium includes the following AACSB accredited schools: the University of Wisconsin-Eau Claire, the University of Wisconsin-Oshkosh, and the University of Wisconsin-Parkside. The Consortium MBA program is managed by UW-Eau Claire."* (CR 1: 394)

(1) p.19, sec. 4: *"UW MBA Business Consortium Planning and Steering Committee. One member ........ will participate on the UW MBA Business Consortium Planning and Steering Committee."* (CR 1: 396)

Dr.Krueger testified that this was a book of faculty policies and procedures that Dean Dock was trying to bring from the University of Wisconsin-Eau Claire; and that Defendant had not adopted it as its policy. (CR 1: 706: p.63: line 18 to p.64, line 3).

### Defendant Classified Appellant as a Full Professor 1999 to 2007

This Defendant had classified Appellant as and employed Appellant as a full professor for 15 years: 1989 to 2007. (CR 1:799, 800; CR 1: 650-51, sec. 1)

57

<u>Defendant's Supplemental Explanation to the EEOC Investigation</u>
<u>Established Defendant's Faculty Handbook, not Ex. 13 was not the policy used to</u>
<u>evaluate a Full Professor</u>

Defendant's Dec 11, 2013, Supplemental Response to the EEOC: Defendant

acknowledged to the EEOC investigator that it was Defendant's Faculty Handbook

that set out the requirements for the position of Full Professor. (CR 1: 907-908)

It was not Def MSJ Ex. 13,

===========================================

<u>Documents relied upon by Defendant</u>
<u>were not used in the Actual Decision-Making process</u>

Defendant produces Def MSJ Exhibits, 10, 14, and 15 to assert that, as a matter

of law, Appellant did not possess these new qualifications. (CR 1: 303-304).

These exhibits were never a part of the actual decision-making process.

None of these documents were part of Appellant's application. (CR 1: 797-

819). Krueger establishes that only Appellant's / an applicant's application was

used in determining the basis of non-selection or selection: None of these

documents were used or relied upon in the actual decision-making process. (CR 1:

697, Krueger: p.24, lines 9 to 25).

<u>Def MSJ ex. 10:</u> (CR 1: 366-371). Appellant's 2000 evaluation (CR 1: 366).
The Dean Diersing wrote "*Congratulations on a very good annual evaluation'.*
(CR 1: 370).

58

Def. MSJ ex. 14: (CR 1: 475) One page from Appellant's 2001 evaluation beginning with Dean Diersing acknowledging Appellant's great job performance: *'Congratulations on another fine annual evaluation. Your teaching evaluations, professional growth and development, research, and service were all excellent'.* (CR 1: 475).

Def. MSJ ex. 15: (CR 1: 477). October 23, 1997: one page memo from then Dean Bigbee. (CR 1: 477). Dean Bigbee was experiencing personal problems and resigned shortly after this date. (CR 1:

===========================

Disparate Treatment
Defendant did not require Sullivan, the younger candidate selected,
to possess these newly alleged qualifications
of 'a professional, a facilitator, and a trustee'
which form the basis of Defendant's Motion for Summary Judgment

## Disparate Treatment
### these New Requirements Not Applied to Younger Applicant Hired

At the time of the actual selection process, the Defendant's Accounting Department faculty and Chair of the Selection Committee had determined that Sullivan, the younger applicant, did not meet the position's which would include the new requirements of being "a professional, a facilitator, and a trustee" and was not qualified for the Chair.

The Chair Search Committee members determined that Sullivan did not meet the required qualifications and Aukerman determined her hiring was illegal. See: (CR 1: 838) (CR 1: 837) (CR 1: 836) (CR 1: 840) (CR 1: 871; 872--sec 10) (CR 1: 846)

**Defendant asserts that Appellant was not AACSB AQ qualified because Appellant had not taught in the 18 month period prior to applying. (CR 1: 305-306:Def MSJ p.13-14).**

### ii. Appellant was AACSB Academically Qualified

Defendant's MSJ asserted that Appellant lost his AACSB AQ status by not teaching for the 18 months prior to applying. (CR 1: 304-305, sec ii)

### Defendant's Assertion that AACSB Standards Required to be 'currently employed' at time of Application is FALSE

Defendant processed Appellant's application as a qualified candidate through-out the entire hiring process by Defendant's Hiring Authority because current employment was not an actual requirement. (CR 1: 883-886, 888, 892)

### Defendant Admits to EEOC Appellant is AACSB AQ

Defendant admitted to the EEOC that Appellant met the Chair position's minimum qualifications which included being professionally qualified to be AACSB Academically Qualified. (CR 1: 865-866; CR 1: 782))

### Judge Vela denied Defendant's prior Motions asserting this same argument

Defendant made this same argument and the presented same exhibits to Judge Vela on March 10, 2015. (CR 1: 23-26, 31--Defendant's Summary of Argument with attachments on Plea to the Jurisdiction and No-Evidence Summary Judgment).

Judge Vela found a fact issue existed and denied Defendant's pleadings to dismiss on this argument. ( CR 1: 291, 292)

Defendant argued to Judge Vela that Appellant was not qualified because Appellant lost AACSB AQ status because: (1) Appellant was not currently employed at time of applying; (2) Appellant had not taught in a classroom for prior 18 months.

Defendant produced to Judge Vela the same exhibits as relied upon in this argument in its current Motion for Summary Judgment:

(a) AACSB Standard 10: (CR 1: 295: Ex. 16 to Def MSJ), (CR 1: 31: Def ex list for March 9, 2015, Summary of Argument)

(b) Appellant's Application: (CR 1: 31: Def ex list for March 9, 2015, Summary of Argument; and CR 1: 295: Ex. 23 to Def MSJ)

(b) Dock deposition: (CR 1: 295: Ex. 17 to Def MSJ) (CR 1: 31: Def ex list for March 9, 2015, Summary of Argument)

(c) Krueger deposition: (CR 1: 296: Ex. 23 to Def MSJ) (CR 1: 31: Def ex list for March 9, 2015, Summary of Argument)

=================================================================

AACSB does not have a <u>requirement that actual teaching of courses is required to maintain AACSB AQ status.</u> (CR 1: 660-61, sec.40 ; CR1: 896-901 -- AACSB standard 10)

<u>AACSB Standard 10 and AACSB White Paper Establish</u>
<u>Appellant Maintained his AACSB AQ Status</u>

Defendant admitted in both its March 9, 2015, Summary of Argument presented to Judge Vela and in its Motion for Summary Judgment that the AACSB does not have a requirement regarding an 18 month break in employment, but that the AACSB looks at a five (5) year period for accreditation of AQ (academically qualified) status. (CR 1: 25, Mar 9, 2015, Summary of Argument, p.3, sec. 6: *'evidence of developmental activities within the past five years...*" citing AACSB Standard 10) (CR 1:304, sec. i: *"discipline based scholarship over the previous five years"* citing its exhibit 16 which is AACSB Standard 10 as shown identified at CR 1: 295).

AACSB Standard 10 identifies a *"non-exhaustive list of possible activities that faculty may undertake to support the maintenance of academic or professional qualifications":* (CR 1: 900 AACSB Standard 10 - mid page)(CR 1: 904: mid page)

Relevant journal and/or other business publication editorships and/or editorial board/committee service
Consulting activities that are material in terms of time and substance
Faculty internships
Sustained professional work supporting qualified status
Leadership positions in recognized professional/academic societies
Advanced academic coursework
Relevant, active service on boards of directors
Documented continuing professional education experiences

Significant participation in professional and/or academic conferences

Additionally: " *It is not AACSB International's intent to limit the range of development activities that may be undertaken.*" (CR 1: 900- mid page).

======================================

In the pending MSJ, Defendant left out AACSB Standard 10 it presented to Judge Vela, and added a different exhibit, AACSB White Paper Deploying Academically Qualified Faculty, to try to allege the same argument. (CR 1: 545 Def Ex. 22). This document sets out the same ways to maintain AACSB AQ status as AACSB Standard 10 which Defendant omits. The document states: (CR 1: 904, mid page)

### Activities Sufficient to Sustain Academically Qualified (AQ) Status

"All faculty members are expected to demonstrate activities that maintain the currency and relevancy of their instruction. Faculty members can maintain qualifications through a variety of efforts including the production of intellectual contributions, professional development, and current professional experience."

### APPELLANT MAINTAINED AACSB AQ STATUS

Defendant's MSJ admitted that AACSB AQ status is maintained / sustained by under AACSB guidelines if professor /faculty *'continue to undertake appropriate development activities that sustain his ..... intellectual capital and currency in the field of teaching'*. (CR 1: 305 middle para ).

63

This wording means that a person needs to remain "current in their field of teaching." Appellant's "field of teaching" is accounting. (CR 1:660, sec.40) This does not mean someone needs to be teaching. (CR 1:660, sec.40) The AACSB Sec. 10 does not mention classroom teaching as a requirement to maintain AQ currency. (CR 1:660, sec.40). AACSB Standard 10 clearly sets out what activities are necessary to "remain current." Actual Teaching is not a requirement. (CR 1:661, sec.40 top pg).

### Appellant's Five Year Look Back Period Maintenance of AACSB AQ Status

Defendant admits in its Motion for Summary Judgment that there is a "*five-year look back used in making applications for AACSB accreditation*". (CR 1: 305, top sec) By defendant's own acknowledgement of a five year look back period, Appellant was AACSB AQ at the time of the Defendant's selection of the Chair opening in August of 2012.

December 2009: Appellant had a formal record of being AACSB Academically Qualified while employed at the University of Texas Pan American which ended May of 2010. (CR 1: 890) Appellant would have remained AACSB Academically Qualified until May of 2015 without any activities.

May 2010: Appellant left UTPA and was AACSB Academically Qualified his entire time while working at UTPA. (CR 1: 652, sec. 5).

64

August 2012: date of employment decision--Defendant hired the younger candidate, Sullivan, and did not hire Appellant. (CR 1: 892, 842-844)

December 2014: the Date Appellant would remain qualified as AACSB Academically Qualified, with no new qualifying activity, using date of UTPA's AACSB December 2009 formal certification of Appellant as AACSB AQ and the five year look forward time period. (CR 1: 890)

==================

## Appellant Maintained Currency in Appellant's Field as Required to Maintain AACSB AQ Status

Appellant's Evidence of Maintaining AACSB Academically Qualified status

Appellant's publications vastly exceeded the amount both Director of Research Krueger and Associate Dean testified were needed to be qualified for AACSB AQ status-- 3 publications during that period. (CR 1: 914; CR 1: 700, p.37, lines 16-23; CR 1: 701, p.38, lines 8-19) : In the immediate three year period (2009-2012) prior to Appellant's application with Defendant, Appellant had a total of eight acceptable quality publications (all of which were in journals with acceptance rates of less than 30% listed in Cabell's director). (Ex. 1: sec. )(Ex.11: Appellant's application, p.tamu 0027-0028).

Appellant had continuously undertaken additional AACSB approved activities to maintain currency in Appellant's field of accounting. Appellant's resume identified: (Ex. 11)(CR 1: 900 mid page; 904 mid page.

(1) Part-time self-employment as a Certified Public Accountant (CR 1: 800)

(2) accounting publications; 2009-2012: Appellant published eight acceptable quality publications in journals with acceptance rates of 30% or less acceptance rate, including five publications from May 2010, to March 2012.; (CR 1: 803-804);

(3) accounting paper presentations: 2009-2012: Appellant made 12 accounting paper presentations, including 6 accounting presentations from May 2010 to March 2012; (CR 1: 811-812);

(4) professional services: 2011-2012-current, Appellant was a reviewer of Manuscripts for The CPA Journal, which is published by the New York Society of CPA's (CR 1: 812-813);

(5) August 2011: Appellant participated in Accounting Professional Meeting: American Association National Meeting in August 2011 where Appellant reviewed two accounting papers. (CR 1: 813);

Professional Services: Appellant was a member of five professional Accounting Boards: (CR 1: 814);

(7) Awards: In 2011, Appellant received the Institute of Management Accountant's Lybrand Certificate of Merit Award for outstanding character and excellence in contributing to literature for the advancement of management accounting and financial management. (CR 1: 816);

===============================================

66

<u>Defendant's Records</u>
<u>Establish 'Current Employment' was not a Requirement for the Chair Position</u>

Appellant produced evidence to support a finding that:

(1) Appellant was a qualified applicant for the Chair opening; and

(2) Defendant found Appellant to have been a qualified applicant and to have met the required qualifications of the Chair position.

Defendant's Hiring Authority and identified any applicant whose application established that the applicant did meet the posting qualifications in order to be processed as acceptable applicant. (CR 1: 883-884, 885-886)

(1) August 29, 2012: Appellant was notified of non-selection (CR 1: 852)

(2) August 31, 2012: Defendant identified applicants who met the positions required minimum qualifications and applicants who did not meet the positions. Appellant was one of four applicants identified meeting required qualifications but 'not hired'. (CR 1: 885-886).

Applicants meeting required qualifications: (in order as listed)

| | |
|---|---|
| Haque, Mohammed | Not Hired |
| **Vanzante, Neal (Appellant)** | Not Hired |
| Rabbani, Mohammad | Not Hired |
| Ghosh, Dillip | Not Hired |
| Sullivan, Carol | Hired |

Applicants not meeting required qualifications: (in order as listed)

| | |
|---|---|
| Francis, Conrad | Did Not Meet Min Quals |
| Hopson, James | Did Not Meet Min Quals |
| Committee, Bruce | Did Not Meet Min Quals |

(2) September 18, 2012: Defendant again printed the applicant log. (CR 1: 883-884). The applicants were listed in alphabetical order. Appellant was one of four applicants identified meeting required qualifications but 'not hired'.

Applicants meeting required qualifications: (in order as listed)

| | |
|---|---|
| Ghosh, Dillip | Not Hired |
| Haque, Mohammed | Not Hired |
| Rabbani, Mohammad | Not Hired |
| Sullivan, Carol | Hired |
| **Vanzante, Neal (Appellant)** | Not Hired |

Applicants not meeting required qualifications: (in order as listed)

| | |
|---|---|
| Committee, Bruce | Did Not Meet Min Quals |
| Francis, Conrad | Did Not Meet Min Quals |
| Hopson, James | Did Not Meet Min Quals |

## Dean Dock and Dr.Krueger

August 23, 2012: Defendant processed Appellant as one of five candidates that met Chair position requirements to be considered for hire. (Ex. 18) The qualified candidates for hiring were:

| | |
|---|---|
| Ghosh, Dillip | Not Hired |
| Haque, Mohammed | Not Hired |
| Rabbani, Mohammad | Not Hired |
| **Vanzante, Neal (Appellant)** | Not Hired |
| | |
| Sullivan, Carol | Hired |

**ELEMENT No. 3: Appellant was subjected to an adverse employment action;**

Defendant sought applicants for the advertised Chair of Department of Accounting and Finance opening. (CR 1: 780-797) Appellant applied. Appellant was not hired for the advertised and open position the subject of this lawsuit, Chair of the Department of Accounting and Finance. (CR 1: 892; CR 1: 650-51, sec. 4). NOT DISPUTED

**ELEMENT No. 4:**

**A. defendant hired someone younger than Appellant :**

Defendant's Motion for Summary Judgment does not contest and admitted that Carol Sullivan was substantially younger candidate than Appellant. (CR1:301, sec.A).

Dean Dock had first-hand knowledge of the ages and disparity in ages of Sullivan and Appellant.

Appellant was 66 years old at the time of applying for the Chair opening. (CR 1: 652, sec. 4). Dean Dock had met Appellant at a business function at TAMU-K a short while before Appellant applied for the Chair opening. (CR 1: 653, sec. 4).

69

Dean Dock drove to personally meet Sullivan at an off campus location a few weeks after Sullivan applied for the Chair opening. (CR 1: 834)    Sullivan was 51 years of age and 15 years younger than Appellant. (CR 1: 652, sec. 4). (CR 1: 918, p. 48, lines2-7)(CR 1: 653, sec.4)

Carol Sullivan was noticeably younger than Appellant. (CR 1: 652, sec.4)

In an age discrimination suit, a Appellant may satisfy and establish his *prima facie* case if the person hired is younger than the Appellant. Age discrimination statutes do not require that the person hired be outside the class protected by the age discrimination statute. *O'connor v Consolidated Coin Caterers Corp*, 517 US 308, 312, 116 S.Ct. 1307 (1996). Appellant may establish his prima facie case when person hired is five (5) years younger. *Rachid v Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).

### Disparate Treatment: Defendant treated the younger applicant hired (Sullivan) differently

Appellant incorporates herein his facts and argument regarding:

1. Sullivan not meeting its basis of *meet general qualifications'* of Leadership, Administration, Interpersonal and professional communication

2. Sullivan not meeting its basis that the selectee must be "a professional, a facilitator, and a trustee."

3. Sullivan was determined not qualified and hired. (CR 1: 836-838, 846)

**STEP THREE: Appellant establishes a factual issue to show that Defendant did not have a legitimate non-discriminatory reason its employment decision at time of decision;**

Once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."Rincones at 236, citing Reeves at Reeves 120 S.Ct. 2097, 2108-09)

"Thus, a Appellant's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Rincones at* 236, citing Reeves at 148.

The court must draw all reasonable inferences in favor of the nonmoving party and not make credibility determinations or weigh the evidence. Credence must be given to the evidence supporting the nonmovant as well as any evidence supporting the moving party that is uncontradicted, unimpeached, and **not attributable to interested witnesses.** Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (emphasis added).

------------------------

71

## DIRECT EVIDENCE

If a material fact is supported by direct evidence, then the issue must be submitted to the jury. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 753-54 (Tex 1975)  Appellant restates his Direct Evidence argument herein as if set forth verbatim.

## CIRCUMSTANTIAL EVIDENCE

Defendant reasserts its arguments regarding Appellant being qualified for the position and reasserts its argument regarding Appellant's 2006 Settlement and Release with TAMU Corpus Christi: : (CR 1: 305-307)

Reasserted earlier arguments raised in its assertions that Appellant was not Qualified.

1. that Appellant was prohibited from applying for the Chair position, by his 2006 Settlement and Release with TAMU Corpus Christi.

2. that Appellant was not qualified because of Appellant's alleged poor record of employment with Defendant (CR 1: 306, B)

3. that Appellant was not qualified because of Appellant's based on Appellant's alleged absence 'from the teaching profession' for the eighteen months prior to Appellant's application  (CR 1: 306, B)

As evidence Defendant's legitimate reasons are false:

(1) Appellant restates his qualification arguments herein as if set forth verbatim

(2)  Appellant restates his disparate treatment  arguments herein as if set forth verbatim.

(3) )   Appellant restates his 2006 Settlement and Release with TAMU Corpus Christi  arguments herein as if set forth verbatim.

=================================

Defendant's also asserts the reason that Appellant was not hired and Sullivan was hired was:  Sullivan was clearly better qualified than Appellant (Vanzante). (CR 1: 306-307)

    a. because Appellant had not taught for 18 months

    b.  Sullivan's articles were better than Appellant's articles.

These are all new reasons and not used as a basis by Defendant at the time the decision was made to not hire Appellant and to hire the younger applicant, Sullivan.


**Appellant has provided substantial evidence that
each alleged legitimate non discriminatory reason is false.**

<u>Defendant has already investigated and determined that  Dean Dock's Hiring of
Sullivan was Wrongful</u>

Defendant's internal investigation conducted at the time of the failure to hire Appellant and the hiring of Carol Sullivan determined that the hiring was an

73

*"Inappropriate, unethical, and/or illegal actions by Dean Tom Dock".* (CR1: 872, Sec. 10)

August 15, 2012: Associate Dean Aukerman notified Martin Brittain, the Defendant's Hiring Authority for the Chair selection process, that Dean Dock's hiring of Carol Sullivan was inappropriate, unethical, and/or illegal. Dr.Aukerman determined that: (CR1: 871, 872, Sec. 10)

Sec (10) *The faculty who were involved in the interview of Carol Sullivan for the Accounting and Finance Department Chair position indicated that she was unacceptable by a margin of 8 to 1. "Tom Dock had decided previously that he wanted to hire her. She was not recommended for an interview by the search committee."* (CR1: 872, Sec. 10)

(*Defendant produced this document after Dr.Aukerman's deposition)

## Appellant's 2006 Settlement and Release with TAMU Corpus Christi was NOT a basis for not hiring Appellant.

Appellant incorporates his 2006 Settlement and Release with TAMU Corpus Christi argument above here as if set forth verbatim.

Appellant has produced evidence to show that the Defendant did not rely on the 2006 Settlement and Release with TAMU Corpus Christi and the Release was not a basis for not hiring Appellant.

Appellant produce evidence to establish that Appellant was not barred from applying for the Chair position by the 2006 Settlement and Release with TAMU Corpus Christi.

Appellant produced evidence that Defendant Texas A&M University Kingsville did not consider Appellant barred from applying for positions, consistent with the terms of the 2006 Settlement and Release with TAMU Corpus Christi.

1. Appellant had applied for positions with Defendant four times prior to applying for the Chair opening.

2. August 29, 2012: In notifying Appellant of non-selection for the Chair, Defendant told Appellant *"we hope you will continue to give our institution consideration for employment."* (CR 1: 852)

**Defendant's basis that Appellant was not hired because of Appellant's alleged poor record of employment with Defendant is FALSE**

Defendant's Supporting Evidence was Not Used or Relied upon by Decision-makers in Not Hiring Appellant:

Defendant's exhibits were not used nor relied upon in the actual decision making process and are dated 1997 to 2002 and. The applicants submitted only a cover letter and resume during the application process. (CR 1: 797-819 Appellant applic; CR 1: 821-832--Sullivan applic)

Dr.Krueger testified that the basis for hiring Sullivan and not hiring Appellant was based solely on a review of their applications. (CR 1: 697, p.15-22)

75

Appellant's application did not contain the information nor these documents that defendant now produces to assert this new reason. (CR 1: 797-819)

<u>Defendant's basis that Appellant was not qualified because of Appellant was not currently teaching when applied and Appellant's alleged absence 'from the teaching profession' for the eighteen months prior to Appellant's application is not worthy of credence.</u>

Associate Dean Aukerman, reviewed Appellant's application and resume which identified Appellant's last teaching position in May of 2010 and that Appellant was not currently employed at the time of applying,  testified that Appellant met both of the Chair position's required qualifications:

Aukerman then testified:

1. Appellant was and met the Defendant's AACSB Academically Qualified requirements for the position. (CR 1: 738, p.82, lines 2-20).

2. Appellant was qualified to be hired as a "*Full Professor*". (CR 1: 738, p.82, lines 5-21) (Appellant's application at CR 1: 797-819; teaching employment history at CR 1: 800).

Appellant has established that:

1. Defendant's requirements for a Full Professor require five years employed in rank and do not require current employment.

2. The AACSB standards do not require current employment to be AACSB AQ accredited.

76

3. The AACSB standards allow a five year look back period to qualify for current AACSB AQ status.

Defendant's also asserts the reason that Appellant was not hired and Sullivan was hired was: Sullivan's resume showed Sullivan was clearly better qualified than Appellant (Vanzante). (CR 1: 306-307)

a. because Appellant had not taught for 18 months

This is a false basis: Appellate set out in detail in his Qualification argument that not teaching for 18 months was not a basis for the decision and was not relevant to the position's required minimum qualifications of being a Full Professor or AACSB AQ accredited.

b. Sullivan's articles were better than Appellant's articles.

This is false: Appellant established that Appellant's articles vastly exceeded AACSB accreditation requirements Both Dr.Krueger and Assoc. Dean Aukerman establish that Appellant needed only 3 articles in the prior five year period to meet AACSB AQ accreditation standards. (Ex.3: p.37, lines 17-23). Ex. 37: feb 24 email

Appellant's publications vastly exceeded the amount required for AACSB AQ status: In the immediate three year period (2009-2012) prior to Appellant's application to Defendant, Appellant had a total of eight acceptable quality

77

publications (all of which were in journals with acceptance rates of less than 30%). (Ex. 1: p.3, sec.6)(Ex.11: Appellant's application).

Krueger never examined Sullivan's articles. Dr.Krueger testified that he did not evaluate or and read Sullivan's publications during the hiring process: Krueger did not review or evaluate Sullivan's publications to determine or verify if Sullivan met the Chair position's AACSB requirement prior to Sullivan being hired. (CR 1: 704: p.57, lines 5-11). Krueger testified that it a year after Sullivan was hired in August of 2012, when Sullivan provided Krueger copies of her publications when Sullivan moved into the Chair's office in Fall of 2013. (CR 1: 714, p.57, line 21 correction).

Defendant's own documents establish this is false. The evidence established Defendant's Search Committee, Chair of Search Committee and Associate Dean of the Dept. had all determined from Sullivan's resume and interview that Sullivan did not meet the position's requirements and was not qualified for the position. (CR 1: 837)(CR 1: 838)(CR 1: 836) (CR 1:840) (CR 1:871; 872 - sec.10)(CR 1: 846)

## Dean Dock Ignored the vote of the Search Committee and Hired Carol Sullivan

August 16, 2012: Associate Dean Aukerman, aslo Chair of the Search Committe, notified Provost Gandy that Chair Search Selection Committee and

department faculty had determined Sullivan was not qualified to be hired and was "unacceptable". (CR 1: 846).

The faculty search committee evaluations where that Sullivan was not qualified to be hired, should not be hired and referenced that the committee could not even determine Sullivan's qualifications from Sullivan's application. (CR 1: 837).

## Dock changed the terms of the advertised position requirements and did not re-advertise the position in order to hire Sullivan.

The Defendant needed to hire a Chair of the Department of Accounting and Finance to begin January 7, 2013, and authorized the funding. (CR 1: 780) Dean Dock changed the hiring date without re-posting the position. The original hiring date started mid-semester which excluded persons already working under contract for the 2012-2013 school term from applying.

Dock changed the beginning date from January 1, 2013, to September 1, 2013, in order to hire Sullivan beginning August 22, 2013. (CR 1: 908: Sullivan was under contract at the University of St. Thomas for the September 2012 to May 2013 school term).

### The change in start date affected the applicant pool and should have been re-posted.

Martin Brittain, the Hiring Authority, testified that the normal process was "*if you want to make any changes at all, it requires a new -- cancellation and a new*

*posting"*. (CR 1: 755 at p.31, lines 13-20). Brittain testified that the Chair posting listed January 7, 2013, as the start date which was in the middle of the 2012-2013 school term; and that starting in the middle of a school term *'could make it more difficult for them* (person already under contract for the 2012-2013 school term ) *to apply'*. (CR 1: 755 at p.33, lines 10-20; p.34, lines 9-15). By a fortiori, this would prevent applicants from applying who were already under contract for the 2012-2013 school term.

## DISPARATE TREATMENT
### Carol Sullivan, Candidate Hired,
### Did Not Meet Required Minimum Qualification
### to Hold Rank of Full Professor When Hired

Defendant required five years of employment in position of Associate Professor or higher rank before qualifying to be placed into Full Professor position. (CR 1: 651, sec. 3)(CR 1: 911, sec. B.4.1.6(b)--Faculty Handbook). Sullivan had only three years of employment in position of Associate Professor at the time Defendant hired Sullivan. (CR 1: 651, sec. 3)

An applicant's work history must be known in order to determine whether qualified to hold the rank of Full Professor as the faculty member must have 5 years working in rank of Associate Professor. (CR 1: 651, sec. 3; 908 mid page - Sullivan's revised work history provided to the EEOC 15 months after she had been hired).

80

Appellant's application cover letter and work history identified Appellant had been a Full Professor with the Defendant for 18 years, till 2007. (CR 1: 799 and 800)

Sullivan's application did not provide a work history to determine whether Sullivan met he minimum required qualification to be a Full Professor. (CR 1: 823-825 Sullivan application). The Chair faculty search committee members found that Sullivan had not shown she had five years holding a position of Associate Professor or higher. Finding: *"no history provided of places worked and dates"* (CR 1: 836); *"Dr.Sullivan's resume and cover letter did not list key information. For example current place of work, where all she had worked in the past....."* (CR 1: 837)

In December of 2013, fifteen months after Sullivan was hired, Defendant and Sullivan prepared a work history in an attempt to show Sullivan met the minimum qualification to hold the rank of Full Professor by having been employed as an Associate Professor or higher for five years. (CR 1: 908, 906)

This information was not set out in Sullivan's March 5, 2012application and resume submitted. (CR 1: 821-832)

To show Sullivan qualified for hire as a Full Professor, Defendant had to intentionally misrepresent Sullivan's work history to the EEOC.

Defendant had to include Sullivan's 2012-2013 year of employment with the University of St. Thomas. (CR 1: 908) The Defendant's new Chair was to begin working on January 7, 2013. (CR 1: 780)

Sullivan did not have the required five years at the time she was hired in August of 2012, because Defendant needed to include Sullivan's employment for the 2012-2013 school term at another university to try to show Sullivan qualified with five years employed in rank of Associate Professor or higher to qualify as a Full Professor, as required to be hired. (CR 1: 908-resume)(CR 1: 782-job posted minimum required qualification of Full Professor)

December 11, 2011: Defendant's identification of Sullivan's work history.

Only the three years employed as an Associate Professor of Accounting qualified toward the five years employed in rank. (CR 1: 651, sec.3)

Positions of Visiting Associate Professor are not positions of 'rank'. (CR 1: 651, sec. 3). Sullivan's identified employment history was positions of Visiting Assoc. Professor.

(1) 'Visiting Associate Professor of Accounting, University of St. Thomas during the 2012-2013 school term'. (CR 1: 908). Does not count towards Sullivan's five year requirement because this is school year after Sullivan hired in Aug 2012).

(2) Visiting Professor of Accounting, Seattle University (2008-2009). Employment as Visiting Professor is not employment in 'rank'. (CR 1: 651, sec.3)

(3) <u>Visiting Professor of Accounting, University of Texas at Arlington (2000-2002</u>): Employment as Visiting Professor is not employment in 'rank'. (CR 1: 651, sec.3)

(4) <u>Visiting Professor, Texas A&M University at College Station (1996-1997</u>): Employment as Visiting Professor is not employment in 'rank'. (CR 1: 651, sec.3)

## CONCLUSION

Appellant submits that if the facts and allegations he has presented are taken as true and construed in his favor, Appellant has presented an issue of fact to be determined by a jury on all issues; including that Appellant's 2006 Settlement and Release with TAMU Corpus Christi is not a basis to dismiss Appellant's; that his age was a motivating factor in the Defendant's decision not hire Appellant; that the Defendant's non-discriminatory reasons for its actions are false; and that a reasonable juror could infer discrimination from the evidence presented.

## PRAYER

For all the above reasons, Appellant Neal Vanzante requests this Court to vacate and/or reverse the Trial Court's Order Granting Defendant Motion for Summary Judgment, and remand Plaintiff's lawsuit back to the trial court to be placed on its trial docket. Appellant also requests any and all relief to which he is entitled at law or in equity, and requests general relief.

Respectfully submitted,

_/s/ Chris McJunkin_____
Chris McJunkin
State Bar No. 13686525
2842 Lawnview
Corpus Christi, Tx. 78404
Tel: (361) 882-5747
Fax: (361) 882-8926
cmcjunkin@stx.rr.com

84

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP 9.4(i)(2)(B), I hereby certify that Statement of Facts, summary of argument, argument, conclusion and prayer contain 14,292 words as determined by WORD 2007

_/s/ Chris McJunkin_____

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October 2015, a copy of the foregoing was delivered in accordance with the Texas Rules of Civil Procedure on the following person:

Mariel Puryear, Assistant Attorney General
Office of Attorney General - Litigation Division
P.O.Box 12548, Capitol Station
Austin, Tx. 78711-2548
Fax: (512) 320-0667
Email: Mariel.puryear@texasattoneygeneral.gov

_/s/ Chris McJunkin_____

85

# APPENDIX

Appendix1:  June 10, 2015: Order Granting Defendant Texas A&M
          University-Kingsville's Motion for Summary Judgment (CR 1: 1006)

Appendix 2: March 18, 2015: Order Denying Defendant's No-Evidence Motion
          for Summary Judgment  (CR 1: 291).

Appendix 3:  March 25, 2015: Order Denying Defendant's Plea to Jurisdiction
          (CR 1: 292).

Appendix 4:  October 9, 2015: Appellant's Motion for Extension of Time
          to File Brief to October 23, 2015, was granted.

Appendix1:   June 10, 2015: Order Granting Defendant Texas A&M
            University-Kingsville's Motion for Summary Judgment (CR 1: 1006)

| | | |
|---|---|---|
| NEAL VANZANTE,<br>Plaintiff | §<br>§<br>§ | IN THE DISTRICT COURT |
| vs. | §<br>§<br>§ | 105TH JUDICIAL DISTRICT |
| TEXAS A&M UNIVERSITY-<br>KINGSVILLE,<br>Defendant | §<br>§<br>§<br>§ | KLEBERG COUNTY, TEXAS |

## ORDER GRANTING DEFENDANT TEXAS A&M UNIVERSITY-KINGSVILLE'S MOTION FOR SUMMARY JUDGMENT

Came on this day to be heard Defendant Texas A&M University- Kingsville's Motion for Summary Judgment, and any responsive pleadings and/or oral argument. After considering the evidence, the Court finds the Motion does have merit and makes the following ruling:

IT IS HEREBY ORDERED that Defendant Texas A&M University-Kingsville's Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's lawsuit in its entirety is DISMISSED with prejudice.

~~IT IS FURTHER ORDERED that Defendant is awarded attorney's fees and costs.~~

SIGNED this ____ day of _____, 2015.

_____
JUDGE PRESIDING

Appendix 1

1006

Appendix 2: March 18, 2015: Order Denying Defendant's No-Evidence Motion for Summary Judgment (CR 1: 291).

CAUSE NO 14-238-D

| NEAL. VANZANTE,<br>Plaintiff | * | IN THE DISTRICT COURT |
| | * | |
| VS. | * | 105TH DISTRICT COURT |
| | * | |
| TEXAS A & M UNIVERSITY--<br>KINGSVILLE,<br>Defendant | * | KLEBERG COUNTY, TEXAS |

**ORDER DENYING**
**DEFENDANT'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT**

Be it remembered that on this day came on to be heard Defendant's No-Evidence Motion for Summary Judgment, and the Court, after considering the pleadings, evidence and argument of the parties, is of the opinion that the following order should issue:

IT IS HEREBY ORDERED that Defendant's No-Evidence Motion for Summary Judgment, and it is hereby DENIED in its entirety.

SIGNED AND ENTERED on this the 18 day of March, 2015.

_____
JUDGE PRESIDING

291

**Appendix 3:** March 25, 2015: Order Denying Defendant's Plea to Jurisdiction (CR 1: 292).

CAUSE NO. 14-238-D

| NEAL VANZANTE, | * | IN THE DISTRICT COURT |
| Plaintiff | * | |
| | * | |
| VS. | * | 105TH DISTRICT COURT |
| | * | |
| TEXAS A & M UNIVERSITY– | * | |
| KINGSVILLE, | * | KLEBERG COUNTY, TEXAS |
| Defendant | | |

### ORDER DENYING DEFENDANT'S PLEA TO JURISDICTION

Be it remembered that on this day came on to be heard Defendant's Plea to Jurisdiction, and the Court, after considering the pleadings, evidence and argument of the parties, is of the opinion that the following order should issue:

IT IS HEREBY ORDERED that said Plea to Jurisdiction be, and it is hereby DENIED in its entirety.

SIGNED AND ENTERED on this the 25 day of March, 2015.

_____
JUDGE PRESIDING

APPENDIX 3

292

Appendix 4: October 9, 2015: Appellant's Motion for Extension of Time to File Brief to October 23, 2015, was granted.

FILE COPY

CHIEF JUSTICE
ROGELIO VALDEZ

JUSTICES
NELDA V. RODRIGUEZ
DORI CONTRERAS GARZA
GINA M. BENAVIDES
GREGORY T. PERKES
NORA L. LONGORIA

CLERK
DORIAN E. RAMIREZ



# Court of Appeals
## Thirteenth District of Texas

NUECES COUNTY COURTHOUSE
901 LEOPARD, 10TH FLOOR
CORPUS CHRISTI, TEXAS 78401
361-888-0416 (TEL)
361-888-0794 (FAX)

HIDALGO COUNTY
ADMINISTRATION BLDG.
100 E. CANO, 5TH FLOOR
EDINBURG, TEXAS 78539
956-318-2405 (TEL)
956-318-2403 (FAX)

www.txcourts.gov/13thcoa

October 9, 2015

Hon. Christopher E. McJunkin
Attorney at Law
2842 Lawnview
Corpus Christi, TX 78404
* DELIVERED VIA E-MAIL *

Re:     Cause No. 13-15-00313-CV
Tr.Ct.No. 14-238-D
Style:   Neal Vanzante v. Texas A & M University

Dear Mr. McJunkin:

Appellant's motion for extension of time to file brief in the above cause was this day GRANTED by this Court. The time has been extended to Friday, October 23, 2015.

Very truly yours,

Dorian E. Ramirez, Clerk

DER:sc

cc:   Hon. Mariel Puryear (DELIVERED VIA E-MAIL)

APPENDIX 4